UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Stephen Walter Solors,

        Plaintiff,

vs.

Jim Warta, Jim Chamberlin,
Keith Pohl, Gregory Verkuilen,
Julie Olson, Lisa Woog,
Aaron Patrick, Keith Haggestad,
Donald F. Ryan, John J. Sausen,
Rockwell J. Wells, Tim Pickar,
Lori Swanson, and Lyman Whitney,

        Defendants.        Civ. No. 08-5923 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motions to Dismiss. A Hearing on the Motion was conducted on February 5, 2009, at which time, the Plaintiff Stephen Walter Solors appeared pro se; the Defendants Jim Chamberlin ("Chamberlin"),

Gregory Verkuilen ("Verkuilen"), Julie Olson ("Olson"), Lisa Woog ("Woog"), and Lori Swanson ("Swanson") (collectively, the "State Defendants") appeared by John S. Garry, Assistant Minnesota Attorney General; and the Defendants Keith Pohl ("Pohl"), Aaron Patrick ("Patrick"), Keith Haggestad ("Haggestad"), Donald F. Ryan ("Ryan"), John J. Sausen ("Sausen"), Rockwell J. Wells ("Wells"), Tim Pickar ("Pickar"), and Lyman Whitney ("Whitney") (collectively, the "County Defendants") appeared by Kenneth H. Bayliss, III, Esq.[1]

For reasons which follow, we recommend that the State Defendants' Motion to Dismiss be granted, and that the County Defendants' Motion to Dismiss be granted as well.[2]

---

[1] No appearance was made by, or on behalf of, the Defendant Jim Warta, who filed an Answer on December 1, 2008, in which he denies any violation of the Plaintiff's Federal constitutional rights, and in which he further asserts his status as a private citizen, rather than a State actor. See, Docket No. 11.

[2] At the Hearing, the Plaintiff claimed that he did not receive prior notice of the County Defendants' Motion to Dismiss, although a review of the Record discloses that, on November 26, 2008, the County Defendants duly mailed copies of their Motion, and supporting papers, to the Plaintiff. See, Docket No. 9. Indeed, at the Hearing, the Plaintiff advised that his mail carrier had not been dutiful in delivering his mail. Nonetheless, we offered the Plaintiff an opportunity to respond to the County Defendants' Motion in writing, following the Hearing, but the Plaintiff declined. Instead, the Plaintiff asked for, and received, a brief recess at the Hearing, in order to review the County Defendants' Motion, and supporting papers, and the
(continued...)

## II.  Factual and Procedural Background

In this action pursuant to Title 42 U.S.C. §1983, the Plaintiff alleges violations of his constitutional rights, based upon the Defendants' alleged interference with the construction of a roadway, and building, on his land.  See, Complaint, Docket No. 1, at p. 1.  According to the Complaint, the Plaintiff owns land in Crow Wing County and, in September of 2006, he began constructing a roadway "on his private property and on an easement across his neighbors [sic] property," in order to provide access to a "Christian resource center," which he also planned to build.  Id. at ¶5.  As a result of his construction project, the Plaintiff became the subject of an administrative enforcement proceeding by the Minnesota Pollution Control Agency ("PCA"), relating to pollution control requirements, as well as State Court criminal proceedings, relating to three (3) misdemeanor citations, for a violation of Minnesota environmental laws relating to wetland conservation, and for violations of the Crow Wing County Zoning Ordinance (the "Zoning Ordinance").

According to the Complaint, shortly after the Plaintiff began his construction project, the Defendant Jim Warta ("Warta"), who is an adjacent landowner, asked the

---

[2](...continued)
Motion was argued at the time of the Hearing.

Plaintiff if he had the necessary permits for a roadway, and the Plaintiff replied that he "didn't need one."  Id. at ¶6.  Subsequently, Chamberlin, who is a Conservation Officer with Crow Wing County, and Verkuilen, who is a Conservation Officer with the Minnesota Department of Natural Resources ("DNR"), informed the Plaintiff that he could not construct the roadway across a wetland without securing a Construction Stormwater Permit (the "Stormwater Permit") from the PCA.  Id. at ¶7.[3]  As a result of that conversation, the Plaintiff stopped construction for a period of several months. Id.

In July of 2007, the Plaintiff wanted to recommence his construction, so he sent a letter to Swanson, who is the Minnesota Attorney General, in which he demanded evidence of the PCA's jurisdiction over his roadway.  Id. at ¶8, and Exhibit A.[4]  When Swanson failed to respond within ten (10) days, the Plaintiff sent her a self-styled

[3]Although Chamberlin is a County Conservation Officer, he was acting at the direction of the PCA, and as a result, he is represented by the Minnesota Attorney General's Office.  See, Complaint, supra at ¶7; State Defendants' Memorandum in Support, Docket No. 4, at p. 1.

[4]In his letter, the Plaintiff advised that, by requesting a fee of $400.00, the PCA, and Swanson, were conspiring to commit treason against the United States, based upon his belief that the United States Constitution requires payment in the form of gold and silver coin.  See, Complaint, supra, Exhibit A.  The same argument has "been rejected countless times by the federal courts."  United States v. Leiter, 2008 WL 5285456 at *1 (D. Minn., December 18, 2008).

"Notice of Default." Id. at ¶9, and Exhibit C.  Shortly thereafter, Swanson responded to the Plaintiff's letter, by informing him that she could not waive his obligation to secure a Stormwater Permit from the PCA, and that he could not unilaterally declare her, or the State of Minnesota, in "default." Id. at ¶9, and Exhibits D and F.

Nonetheless, in September of 2007, the Plaintiff renewed his work on the roadway, without securing the Stormwater Permit. Id. at ¶10.  By letter dated October 1, 2007, Woog, who is a PCA Compliance Coordinator, advised the Plaintiff that he had violated the Minnesota Rules, and the National Pollutant Discharge Elimination System ("NPDES"), by constructing the roadway across a wetland, without a proper Stormwater Permit. Id. at ¶13, and Exhibit I.  In her letter, Woog directed the Plaintiff to undertake several mandatory corrective actions, in order to cure the alleged violations.  Id.  Woog also informed the Plaintiff that he had a right to submit a written response, within ten (10) days, and that the PCA would consider his response "in determining whether and what level of enforcement action is appropriate." Id.

In response, the Plaintiff asserted that the State had "defaulted" its authority, owing to Swanson's failure to respond to his letter, and he further asserted that the Defendants would be required to pay a $10,000.00 daily fine, for any further "interference" with his construction. Id. at ¶14, and Exhibit J.  Subsequently, on

February 8, 2008, the PCA issued an Administrative Penalty Order to the Plaintiff, which imposed a fine of $10,000.00, based upon his failure to secure the Stormwater Permit for his construction project, as well as his failure to take corrective action. Id. at ¶22, and Exhibit S.

In the interim, on September 20, 2007, Verkuilen sent a Cease and Desist Order to the Plaintiff, pursuant to the Minnesota Wetland Conservation Act, in which he directed the Plaintiff to cease construction on the roadway, and in which he advised that "[f]ailure to comply with either the Cease and Desist Order or any subsequent restoration order * * * is a misdemeanor."   Id. at ¶12, and Exhibit H; see also, Minnesota Statutes Section 103G.2372, Subdivision 1(a)("The commissioner of natural resources, a conservation officer, or a peace officer may issue a cease and desist order to stop any illegal activity adversely affecting ground water quantity, a wetland, or public waters.").  Thereafter, on October 24, 2007, Olson, who is a DNR Conservation Officer, issued a Restoration Order, which required the Plaintiff to restore the wetland by no later than November 30, 2007. Id. at ¶16, and Exhibit S; see also, Minnesota Statutes Section 103G.2372, Subdivision 1(b)("In the order, or by separate order, the commissioner, conservation officer, or peace officer may require restoration or replacement of the wetland or public waters * * * .").

When the Plaintiff failed to comply with the Restoration Order, he was issued a misdemeanor citation (the "State citation"), and directed to appear in Crow Wing County District Court, for an Arraignment, on January 28, 2008. Id. at ¶18, and Exhibits P, Q, and T; see also, Minnesota Statutes Section 103G.2372, Subdivision 2 (a violation of a Cease and Desist Order, or Restoration Order, is a misdemeanor). The Plaintiff chose not to appear, instead sending a self-styled "Judicial Notice" to the Court, in which he advised that the State citation "has been refused for cause without dishonor for lack of subject matter jurisdiction." Id. at ¶19.[5] Accordingly, the State Court issued a Warrant, at the request of the Crow Wing County Attorney's Office, id. at ¶23, and Exhibit T, and on June 3, 2008, the Plaintiff was arrested by Pickar, who is the Crow Wing County Sheriff. Id. at ¶24. Thereafter, on June 4, 2008, the Plaintiff was arraigned, id. at ¶25, and on August 18, 2008, the Court denied the

_____

[5]Apparently, "[t]here exists a segment of the community which believes the phrase is a talisman and that those who use it will be immunized from all manner of legal process." Bisciglia v. Lee, 370 F. Supp.2d 874, 875 n. 1 (D. Minn. 2005), citing Michael D. Johnson, The Ostrich Defense: Internet Scams in Consumer Credit Collection, Bench & Bar of Minn., March 2004. As advised by another Court in this District, the Plaintiff "should take notice that such a belief is erroneous." Id.; see also, United States v. Leiter, 2008 WL 5285456 at *1 (D. Minn., December 18, 2008)("The diagonal positioning [of the words] apparently has some significance, but, like the words themselves, that significance is lost on the Court.").

Plaintiff's Motion to Dismiss the State citation.  Id. at ¶¶26-29, 39, and Exhibits U-V.
The Plaintiff's criminal proceedings were set for Trial on December 1, 2008.  Id.

Thereafter, in September of 2008, Whitney, who is Chairman of the Garrison
Township Board, asked the Plaintiff whether he had a Building Permit, for his then-
ongoing construction of the Christian resource center, and the Plaintiff replied that he
did not need one, since he was working on "patented land."  Id. at ¶33.  Subsequently,
the Crow Wing County Planning and Zoning Office (the "Zoning Office") informed
the Plaintiff that he needed to acquire a Building Permit, in order to comply with the
Zoning Ordinance.  Id. at ¶30, and Exhibit W.

When the Plaintiff failed to do so, he was issued two (2) additional
misdemeanor citations (the "County citations"), for violations of the Zoning
Ordinance, and was directed to appear in Crow Wing County District Court on
October 20, and November 17, 2008.  Id. at ¶32, and Exhibits Y and CC.  In addition,
the Zoning Office issued a Cease and Desist Order, relating to construction of the
building.  Id., Exhibit Z.  Once again, the Plaintiff sent a "Judicial Notice" to the
Court, in which he advised that the County citations "ha[ve] been refused for cause
without dishonor for lack of subject matter jurisdiction."  Id. at ¶38, and Exhibit DD.
The Plaintiff also sent a letter to the Zoning Office, in which he demanded proof of

its jurisdiction over his land.  Id. at ¶36, and Exhibit BB.  According to the Plaintiff, on October 20, 2008, he was arraigned in Crow Wing County District Court, at which time all three (3) misdemeanor citations were consolidated for Trial, which was set for December 1, 2008.  Id. at ¶39 and Exhibit V.  At the Hearing, the parties advised that the Plaintiff was convicted of the State citation, based upon his failure to comply with the Restoration Order, and that, on January 20, 2009, the Plaintiff appealed the conviction to the Minnesota Court of Appeals, where it remains pending.  See, State v. Solors, Case No. A090127, available online at http://macsnc.courts.state.mn.us. The parties further advised that the Plaintiff's County citations, for violation of the Zoning Ordinance, remain pending in Crow Wing County District Court.

Based upon the foregoing allegations, the Plaintiff alleges violations of his rights under the Fourth, Fifth, and Tenth Amendments, although he does not explain the basis for those claims.  Id. at ¶¶1, 40.  For relief, the Plaintiff seeks **only** an injunction, which would prohibit the Defendants from any further interference in his construction of the roadway, and building.  Id. at ¶41.  The Plaintiff asserts those claims against all of the Defendants.[6]

_____

[6]The remaining Defendants have been involved in the Plaintiff's underlying State criminal proceedings -- specifically, Ryan is the Crow Wing County Attorney, Sausen
(continued...)

The State and County Defendants now bring separate Motions to Dismiss, on the ground that abstention is proper under the doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971), since an action presently pends in Minnesota State Court for the Plaintiff's alleged criminal violations.  See, Docket Nos. 2, 6.[7]  The State and County Defendants also contend that the Plaintiff's Complaint fails to state any

---

[6](...continued)
and Wells are Assistant Crow Wing County Attorneys, Patrick and Haggestad are Enforcement Officers for the Zoning Office, and Pohl is an employee of the Crow Wing County Soil and Water Conservation District.

[7]Notably, the State Defendants acknowledge that Younger abstention is inapplicable to the PCA's administrative proceeding, because that proceeding is no longer pending, as the time has expired for the Plaintiff to seek any administrative or judicial review of the Administrative Penalty Order.  See, State Defendants' Memorandum in Support, Docket No. 4, at p. 7 n. 2; Complaint, supra, Exhibit S; see also, Minnesota Statutes Section 116.072, Subdivisions 6 and 7.  Instead, the State is now entitled to commence an enforcement proceeding, in State Court, by way of a Petition but, in that proceeding, the Plaintiff will only be allowed to raise procedural and notice issues, rather than any constitutional claims.  See, Minnesota Statutes Section 116.072, Subdivision 9(b); but cf., Ebiza, Inc. v. City of Davenport, 434 F. Supp.2d 710, 723 (S.D. Iowa 2006)("If the time where the federal plaintiff could have raised such claims has passed, it is not the federal court's duty to revive them."), citing Juidice v. Vail, 430 U.S. 327, 337 (1997)(noting that a litigant's "failure to avail themselves of such opportunities does not mean that the state procedures were inadequate").  Accordingly, we restrict our Younger analysis to the Plaintiff's criminal proceedings, rather than the PCA's administrative proceedings.

- 10 -

constitutional claim.  Id.  The Plaintiff opposes the Motions, and we address the

parties' arguments in turn.[8]

## III. Discussion

A.  Removal.  First, we briefly address the Plaintiff's self-styled "Notice of

Removal," in which he claims to have removed the State Court criminal proceedings

to this Court.  See, Plaintiff's Notice of Removal, Docket No. 13.  In that Notice, the

Plaintiff claims that his suit "involves a federal question," and that "[a] cursory review

---

[8]At the Hearing, counsel for the County Defendants suggested that we could construe Warta's Answer as a Motion to Dismiss, and he further suggested that Warta is not a State actor, and therefore, is not subject to suit under Title 42 U.S.C. §1983. See, Steele v. City of Bemidji, 257 F.3d 902, 906 (8th Cir. 2001)("We reject Steele's argument that the mall is a state actor insofar as it reported Steele's activities to the police"), cert. denied, 535 U.S. 1056 (2002), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); see also, Redding v. St. Eward, 241 F.3d 530, 533 (6th Cir. 2001)(defendant was not a State actor for Section 1983 purposes, merely because she called police to report plaintiff's alleged wrongful activities); Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978), cert. denied, 444 U.S. 841 (1979) (dismissing Section 1983 claim against a private party who "did [nothing] more than supply information to police officers who then acted on their own initiative in arresting [plaintiff]"); Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987)(complaining to a police officer about a person's actions does not constitute State action simply because the officer later arrests that person); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §1983."). However, following a careful review of Warta's written submission, see, Docket No. 11, we reaffirm our initial conclusion, that Warta filed an Answer, rather than a Motion to Dismiss. As a result, we do not further address the Plaintiff's claims against Warta in this Report.

of the plaintiffs [sic] summons in this case and the documents that relate to the state case * * * will give rise to the reasoning as why [sic] this case should be transferred." Id. at pp. 2-3.  At the Hearing, counsel for the Defendants advised that the Crow Wing County District Court has not treated the Plaintiff's State criminal proceedings as removed to Federal District Court, in any respect, notwithstanding the Plaintiff's filings with this Court.  Indeed, as a threshold matter, we note that the Notice of Removal is styled as a pleading to this Court, with no explanation for how the Plaintiff's action could be removed **from** this Court, **to** this Court.

Nonetheless, where, as here, a criminal prosecution is purportedly removed from a State Court, the Federal District Court, to which it was removed, has an obligation to promptly examine a Notice of Removal, sua sponte, in order to determine whether the removal was proper.  See, Title 28 U.S.C. §1446(c)(4).  "If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand."  Id.[9]

---

[9]Title 28 U.S.C. §1446(c)(1) requires that "[a] notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time."

(continued...)

- 12 -

In order to remove a State criminal prosecution, "it must be on the basis of one of three federal statutes, 28 U.S.C. §1442, 28 U.S.C. §1442a, or 28 U.S.C. §1443." Iowa v. Johnson, 976 F. Supp. 812, 816 (N.D. Iowa 1997).  Upon our review of the Plaintiff's Notice of Removal, as well as the materials attached to that Notice, it is clear that none of the statutory provisions, which might allow for the removal of the Plaintiff's State criminal case, apply here.

For removal to occur, "Section 1442(a) requires that a defendant:  (1) act under the direction of a federal officer; (2) show a nexus or 'causal connection' between the alleged conduct and the official authority; (3) have a colorable federal defense; and (4) be a 'person' within the meaning of the statute."   Watson v. Philip Morris Companies, Inc., 420 F.3d 852, 855 (8th Cir. 2005), rev'd on other grounds, 551 U.S. 142 (2007), citing Jefferson County v. Acker, 527 U.S. 423, 431 (1999).  "To qualify

---

[9](...continued)
Here, there is no question that the Plaintiff's Notice of Removal, which was filed on November 26, 2008, was untimely as to the State citation, for which the Plaintiff was arraigned on June 4, 2008, and as to the first County citation, for which the Plaintiff was arraigned on October 20, 2008. See, Complaint, supra at ¶¶25, 39, and Exhibit Y.  However, the Plaintiff's second County citation directed him to appear in State Court on November 17, 2008, less than ten (10) days prior to the filing of his Notice of Removal.  Id., Exhibit CC.  Accordingly, we are unable to find that the Notice of Removal is untimely, with respect to the second County citation. Nonetheless, since we find that the Plaintiff's Notice of Removal is without substantive merit, we do not further address the timeliness of the Notice of Removal.

- 13 -

for removal, a defendant must, among other things, raise 'a colorable defense arising out of [the defendant's] duty to enforce federal law." United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001), quoting Mesa v. California, 489 U.S. 121, 133 (1989), quoting, in turn, Willingham v. Morgan, 395 U.S. 402, 407 (1969).  "The purpose of 28 U.S.C. §1442(a)(1) is to protect federal officials from civil or criminal liability for the performance of their official duties." Charges of Unprofessional Conduct Against 99-37 v. Stuart, 249 F.3d 821, 824 (8th Cir. 2001).

Notably, the Plaintiff makes no allegation that he is a Federal officer; is a property holder whose title is derived from any Federal officer, where the prosecution would affect the validity of any United States law; is an officer of a United States Court; or is a member of Congress; as to whom Title 28 U.S.C.§1442 might apply. He identifies no Federal authority that he was attempting to exercise, or any official duties which resulted in the State charges against him.  Similarly, the Plaintiff does not allege that he is a member of the United States armed forces, as would be required in order to fall within the provisions of Title 28 U.S.C.§1442a.

Lastly, the Plaintiff does not make any attempt to invoke Title 28 U.S.C. §1443, which provides as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1)    Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2)    For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

The Supreme Court has interpreted Section 1443(1) to apply only if the right alleged arises under a Federal law providing for civil rights "stated in terms of racial equality." Georgia v. Rachel, 384 U.S. 780, 792 (1966); see also, Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 621 (1979).

As such, Section 1443(1), "applies only to denials of specific rights of racial equality and not to the whole gamut of constitutional rights * * *." United States ex rel. Sullivan v. Missouri, 588 F.2d 579, 580 (8th Cir. 1978); see also, Neal v. Wilson, 112 F.3d 351, 355 (8th Cir. 1997); Doe v. Berry, 967 F.2d 1255, 1257 (8th Cir. 1992), cert. denied, 507 U.S. 911 (1993); State of Nebraska v. Forbes, 588 F.2d 631, 532 (8th

- 15 -

Cir. 1978). The mere contention, "[t]hat a removal petitioner will be denied due process of law because the criminal law under which he is prosecuted is * * * vague or that the prosecution is * * * a sham, corrupt, or without evidentiary basis does not, standing alone, satisfy the requirements of §1443(1)." Johnson v. Mississippi, 421 U.S. 213, 219 (1975); Neal v. Wilson, supra at 355.

In addition to establishing the applicability of a Federal law enforcing rights of racial equality, the removal petitioner must also demonstrate that he "is 'denied or cannot enforce' the specific federal rights 'in the courts of [the] State." Johnson v. Mississippi, supra at 220, quoting Georgia v. Rachel, supra at 792. In determining whether a defendant has made such a showing, both the Supreme Court, and our Court of Appeals, have instructed as follows:

> It is **not** enough to support removal under [Section] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of

- 16 -

> the federal courts to put their brethren of the state judiciary on trial.  Under [Section] 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

Doe v. Berry, supra at 157-58, quoting Greenwood v. Peacock, 384 U.S. 808, 827-28 (1966); see also, State of Minnesota v. Yeazizw, 2002 WL 31474481 at *3 (D. Minn., November 4, 2002).

Here, despite numerous allegations of wrongdoing, the Plaintiff has not alleged that the requested removal is necessary to vindicate any Federal right guaranteeing racial equality.  Instead, the Plaintiff asserts violations of the Fourth, Fifth, and Tenth Amendments, and he specifically argues that removal is proper solely because his suit "involves a federal question."  Notice of Removal, supra at p. 2.

Although the Plaintiff has asserted a number of allegations concerning the conduct of the Defendants in this action, and their purported attempts to "coerce Solors into following, [sic] statutes, rules and regulations foreign to Solors and his private property," Complaint, supra at ¶1, he has failed to clearly demonstrate that this is one of those rare instances where the defendant's rights will automatically be violated by a State Court Trial, on the pending criminal charges.  As our Court of Appeals explained, in Neal v. Wilson, supra at 355:

> "Removal is warranted only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts." [Georgia v.] Rachel, 384 U.S. at 800, 86 S.Ct. at 1796.  Further, in "the unusual case * * * 'an equivalent basis could be shown for an equally firm prediction that the defendant would be "denied or cannot enforce" the specified federal rights in the state courts.'" Johnson v. Mississippi, 421 U.S. 213, 219, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975)(quoting Rachel, 384 U.S. at 804, 86 S.Ct. at 1796).

As was the case in <u>Neal</u>:

> [The defendant] has not met these stringent requirements. He has not shown that there is a state law preventing him from raising his federal claims in state court, nor has he shown the basis for an "equally firm prediction" that he will be unable to protect his federal rights in state court.

<u>Id.</u> at 355.

Accordingly, while the Plaintiff's failure to establish the applicability of a Federal right guaranteeing racial equality precludes the application of Section 1443(1), the impropriety of removal, under that Section, is corroborated by the Plaintiff's failure to establish his inability to vindicate his Federal rights in the State Courts of Minnesota.  If, as the Plaintiff suspects, the Minnesota State Courts fail to enforce his Federal rights, his "proper course of action is to seek direct review in the United States Supreme Court."  <u>Id.</u>, citing <u>Doe v. Berry</u>, supra at 1258 ("The issues involved * * *

can be decided in the state courts, which have equal responsibility for ruling on federal constitutional issues," and "Berry may then seek review of any adverse rulings in the United States Supreme Court.").

The "color of authority" clause of Section 1443(2) -- the civil rights removal Statute -- is equally unavailable to the Plaintiff.  As our Court of Appeals recently explained:

> Section 1443(2) permits removal of suits initiated in state court against a party "[f]or any act under color of authority derived from any law providing for equal rights or for refusing to do any act on the ground that it would be inconsistent with such law."  In City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), the Supreme Court rejected the argument that, for removal purposes, federal civil rights statutes deputize anyone seeking to exercise a right thereunder.  Id. at 810-13, 86 S.Ct. 1800.  Rather upon lengthy analysis of the origins and intent of the statute, the Court held section 1443(2) "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights."  Id. at 824, 86 S.Ct. 1800.

Bauer v. Transitional School Dist. of the City of St. Louis, 255 F.3d 478, 481 (8th Cir. 2001).

Otherwise stated, this prong of the removal provision is reserved for Federal officers, and persons acting under their direction, who violate or refuse to follow a State law,

"on the ground that it would be inconsistent with a law guaranteeing equal rights." Thornton v. Holloway, 70 F.3d 522, 523 (8th Cir. 1995)[internal quotation omitted]. Since the Plaintiff has not identified himself as a Federal officer, or one who acted at the direction of a Federal officer, he cannot properly invoke Section 1443(2), as a basis for removal.

Indeed, the Plaintiff's pleading specifies that his attempted removal is predicated solely upon Title 28 U.S.C. §1446(a), see, Notice of Removal, supra at p. 1, which simply details the procedure for removal, rather than providing any jurisdictional basis for removal. Accordingly, we find it plain, from the face of the Notice of Removal and its appended papers, that the Plaintiff's criminal prosecution is not properly removable from State Court, and we reject his unsupported claim to the contrary. Therefore, we turn to consider the Defendants' Motions on their merits.

      B.    Younger Abstention.

      1.    Standard of Review. "As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." Beavers v. Arkansas State Board of Dental Examiners, 151 F.3d 838, 840 (8th Cir. 1998), quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976); see also, Barzilay v. Barzilay, 536 F.3d 844, 849 (8th Cir. 2008).

Nevertheless, "federal courts may abstain from deciding an issue in order to preserve 'traditional principles of equity, comity and federalism.'" Id., quoting Alleghany Corp. v. McCartney, 896 F.2d 1138, 1142 (8th Cir. 1990). The doctrine of abstention allows Federal Courts "to decline or postpone the exercise of their jurisdiction to permit a state court to decide the matters at issue." Heritage Publishing Co. v. Fishman, 634 F. Supp. 1489, 1496 (D. Minn. 1986), citing Colorado River Water Conservation District v. United States, supra at 813. The "various 'abstention' doctrines * * * are not 'rigid pigeonholes into which federal courts must try to fit cases,' but rather classes of cases in which federal courts may properly exercise their traditional discretion to withhold equitable or quasi-equitable forms of relief." Night Clubs, Inc. v. City of Fort Smith, Arkansas, 163 F.3d 475, 479 (8th Cir. 1998)[internal citations omitted].

In Younger, the Supreme Court held that "federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004); Barzilay v. Barzilay, supra at 849. While Younger originally was applied to State criminal proceedings, the use of the doctrine has been extended to civil cases, id.; see also, Huffman v. Pursue, Ltd, 420

U.S. 592 (1975)(holding <u>Younger</u> applicable to civil nuisance proceeding, which sought the closure of a theater displaying allegedly obscene films), and to State administrative agency proceedings.  See, <u>Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 626 (1986).

<u>Younger</u> abstention is appropriate when the following three factors are present: "(1) the existence of an ongoing state judicial proceeding; (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges."  <u>Aaron v. Target Corp.</u>, supra at 774, citing <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982); <u>Barzilay v. Barzilay</u>, supra at 850; <u>Cormack v. Settle-Beshears</u>, 474 F.3d 528, 532 (8th Cir. 2007); <u>Norwood v. Dickey</u>, 409 F.3d 901, 903 (8th Cir. 2005).  Even if those three (3) factors are established, abstention should not be granted if "'bad faith, harassment, or some extraordinary circumstance * * * would make abstention inappropriate.'"  <u>Id.</u> at 778, quoting <u>Night Clubs, Inc. v. City of Fort Smith</u>, supra at 479.  The "exception[s] must be construed narrowly and only invoked in extraordinary circumstances."  <u>Aaron v. Target Corp.</u>, supra at 778.

     2.    <u>Legal Analysis</u>.  As noted, the Plaintiff's Complaint seeks to enjoin the Defendants from interfering with his construction of a roadway, and a building,

on his land.  The Complaint also alleges that the Defendants have charged him with misdemeanor offenses, relating to his failure to secure the necessary permits for his construction projects, as well as his failure to restore the wetland which was impacted by the roadway.  In fact, the Plaintiff was convicted of the State citation, based upon his failure to comply with the Restoration Order, and his appeal of that conviction remains pending before the Minnesota Court of Appeals.  In addition, the Plaintiff's County citations, for violations of the Zoning Ordinance, pend in the Crow Wing County District Court.

As noted by the State and County Defendants, the first element for <u>Younger</u> abstention is satisfied, as the Plaintiff's State Court criminal proceedings are plainly pending, with respect to the State and County citations.  Moreover, even if convicted of all charges, the Plaintiff would have the ability to pursue a direct appeal, or post-conviction relief.   See, <u>Rules 28.01, Subdivision 1, and 28.02, Subdivision 2,</u> <u>Minnesota Rules of Criminal Procedure</u> (direct appeal); <u>Minnesota Statutes Sections</u> <u>590.01 et seq.</u> (post-conviction relief); see also, <u>State v. Reinke</u>, 702 N.W.2d 308, 311 (Minn. App. 2005)(appeal from conviction for violation of zoning ordinance); <u>State</u> <u>v. Drum</u>, 1998 WL 170118 (Minn. App., April 14, 1998)(appeal from misdemeanor

conviction for violating a cease and desist order, which directed the defendant to stop draining a wetland).

The second element is also satisfied, as it is well established that "criminal proceedings implicate state interests of the highest order," Ronwin v. Dunham, 818 F.2d 675, 678 (8th Cir. 1987), including those which relate to land use regulation. See, Cormack v. Settle-Beshears, supra at 532 (Younger abstention appropriate where State interests in land use regulation may be implicated); Night Clubs, Inc. v. City of Fort Smith, supra at 480 ("[I]t is well-established that for abstention purposes, the enforcement and application of zoning ordinances * * * is an important state and local interest."); Uland v. City of Winsted, 570 F. Supp.2d 1114, 1118 (D. Minn. 2008) ("The record shows there is an ongoing misdemeanor prosecution against Uland in state court, and that this prosecution involves land use, an issue that traditionally implicates important state interests."), citing Aaron v. Target Corp., supra at 777; see also, Can Manufacturers Inst., Inc. v. State, 289 N.W.2d 416, 420 (Minn. 1979)("[A] regulatory scheme designed to conserve resources, decrease pollution, and protect the environment unquestionably deals with state interests of great magnitude.").

- 24 -

As a result, the only remaining issue is whether the Plaintiff will be afforded a full and fair opportunity to raise his constitutional claims in State Court.   As is pertinent to the Plaintiff's Complaint, the Supreme Court has observed as follows:

> State courts are the principal expositors of state law. Almost every constitutional challenge -- and particularly ones as far ranging as that involved in this case -- offers the opportunity for narrowing constructions that might obviate the constitutional problems and intelligently mediate federal constitutional concerns and state interests.   When federal courts disrupt that process of mediation while interjecting themselves in such disputes they prevent the informed evolution of state policy by state tribunals. Trainor v. Hernandez, 431 U.S. [434, 445 (1977)] * * *. The price exacted in terms of comity would only be outweighed if state courts were not competent to adjudicate federal constitutional claims -- a postulate we have repeatedly and emphatically rejected.   Huffman, 420 U.S. at 610-611.

> *        *        *

> In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims * * * .

Moore v. Sims, 442 U.S. 415, 429-30 (1979).

Although we have been unable to locate any decision, from a Minnesota State Court, which specifically addresses a constitutional challenge in the context of a wetland conservation violation, we have no reason to doubt that the Plaintiff will be able to

assert his Federal constitutional challenges, if any there properly be, in the State Court criminal proceedings, as well as in any subsequent appeal, up to and including the United States Supreme Court.   See, <u>Cormack v. Settle-Beshears</u>, supra at 532 (affirming dismissal, under <u>Younger</u>, where "the state criminal proceedings against Cormack are still pending before an Arkansas district court in which he can presumably raise the Fourth Amendment in defense."); <u>Norwood v. Dickey</u>, supra at 904 ("We 'will not engage any presumption "that the state courts will not safeguard federal constitutional rights."'"), quoting <u>Neal v. Wilson</u>, supra at 357, quoting, in turn, <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, supra at 431.

Indeed, Minnesota Courts regularly consider constitutional challenges to other types of land use regulations, including zoning ordinances.  See, <u>State v. LaFon</u>, 2008 WL 2726964 at *4 (Minn App., July 15, 2008) (considering appeal of misdemeanor conviction, which raised Federal constitutional challenges to water surface use ordinance); <u>State v. Reinke</u>, supra at 311 (constitutional challenge to zoning ordinance); <u>State v. Rose</u>, 2005 WL 1950123 at *2 (Minn.App., August 16, 2005)(same).

Accordingly, we conclude that the third element for <u>Younger</u> abstention has been satisfied in this action, because there is no responsible basis upon which to

conclude that the Plaintiff will not be able to raise his constitutional claims in the State criminal proceedings.   See, <u>Huffman v. Pursue, Ltd.</u>, supra at 609 ("[W]e do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts."); <u>Alleghany Corp. v. McCartney</u>, supra at 1144 ("Since Huffman, courts have consistently held that a party cannot avoid Younger by choosing not to pursue available state appellate remedies."); <u>Zanders v. Swanson</u>, 2008 WL 4117210 at *5 (D. Minn., August 29, 2008) (concluding that the plaintiff "clearly has the opportunity to raise her constitutional challenge to this statute in the criminal proceedings against her."); see also, <u>Title 28 U.S.C. §1257(a)</u> ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari * * * where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States[.]").

The Plaintiff argues that "[t]he State court would have deaf ears when it concerns the federal constitutional rights of the people."  <u>Plaintiff's Memorandum in</u>

Opposition, Docket No. 15, at ¶2-6.[10]  However, the argument appears to be based

more upon a general preference for resolution of the constitutional questions in a

Federal forum, and not upon any perceived inability to raise the issues in State Court.

"'[W]hen a litigant has not attempted to present his federal claims in related state-

court proceedings, a federal court should assume that state procedures will afford an

adequate remedy.'"  Night Clubs, Inc. v. City of Fort Smith, supra at 481, quoting

Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1996).  Consistent with the generally

applicable law, we hold the utmost respect for, and confidence in, the capacity of the

---

[10]The Plaintiff also argues, without explanation, that the Younger doctrine is
inapplicable, simply because he is suing the Defendants in their individual capacities,
rather than their official capacities.  See, Plaintiff's Memorandum in Opposition,
Docket No. 15, at ¶¶1, 2-6 ("The STATE OF MINNESOTA does not have anything
to do with the individual actions of people acting under color of law.") [emphasis in
original]; see also, Complaint, supra at ¶4.  We find the argument to be wholly without
merit.

     At the Hearing, the Plaintiff explained his view, that the Minnesota Attorney
General's Office cannot represent the State Defendants, solely because the Plaintiff
has refrained from naming the State as a party.  We have soundly rejected that
argument, given that the Plaintiff is plainly suing the State and County Defendants
based upon their actions as government officials, and since that the State cannot act,
except through its agents.  Indeed, if the Defendants were not State and County
officials, the Plaintiff would not be able to sustain a Section 1983 action against them.
See, e.g., Steele v. City of Bemidji, 257 F.3d 902, 906 (8th Cir. 2001), cert. denied, 535
U.S. 1056 (2002), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970);
Redding v. St. Eward, 241 F.3d 530, 533 (6th Cir. 2001); Butler v. Goldblatt Bros.,
Inc., 589 F.2d 323, 327 (7th Cir. 1978), cert. denied, 444 U.S. 841 (1979).

State Court to determine matters, which relate to an individual's rights under the Federal Constitution.  Nor do we find any basis, on this Record, to conclude that the State Court action cannot provide an adequate forum within which the Plaintiff can advance his Federal constitutional challenges.

Lastly, the Plaintiff has not made any argument, let alone a persuasive one, that "bad faith, harassment, or some other extraordinary circumstance * * * would make abstention inappropriate."  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, supra at 435; see also, Perez v. Ledesma, 401 U.S. 82, 85 (1971)("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."); Lewellen v. Raff, 843 F.2d 1103, 1112 n. 10 (8th Cir. 1988), cert. denied, 489 U.S. 1033 (1989)(surveying cases for examples of bad-faith prosecution).  Indeed, the Plaintiff apparently admits that he did not secure the necessary permits for his construction project, and he further admits that he refused to comply with the Cease and Desist Orders, and the Restoration Order, which were issued.  Accordingly, there is no basis to conclude that the

underlying criminal proceedings have been commenced in bad faith, or that the Plaintiff will suffer any irreparable injury if we fail to enjoin those proceedings.

In sum, because the Plaintiff's Complaint seeks to enjoin the State and County Defendants' regulation of his construction project, under State law, <u>Younger</u> compels us to abstain from exercising jurisdiction over the claim during the pendency of the State Court criminal proceedings, particularly since the Plaintiff seeks only injunctive relief. Cf., <u>Uland v. City of Winsted</u>, supra at 1118 (observing that, where the plaintiff seeks both damages and injunctive relief, the appropriate remedy is a stay, rather than dismissal pursuant to <u>Younger</u>), citing <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 730 (1996), and <u>Yamaha Motor Corp. v. Stroud</u>, 179 F.3d 598, 603 (8th Cir. 1999). As a result, we recommend that the Motions of the State and County Defendants to Dismiss be granted, insofar as the Plaintiff's claims are based upon the underlying State Court criminal proceedings.

C.   <u>The Plaintiff's Failure to State a Claim</u>.

1.   <u>Standard of Review</u>. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178

(1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004).   In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, <u>Maki v. Allete, Inc.</u>, supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[11]  <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

---

[11]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007)(The standard in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 1960. Here, we apply the Supreme Court's "accepted pleading standard."

the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ---, 127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069

(8th Cir. 2004); <u>Stahl v. United States Dep't of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003).

Materials necessarily embraced by the pleadings include "documents whose contents are alleged in the complaint, and whose authenticity nobody questions, but which are not physically attached to the pleading." <u>Fraenkel v. Messerli & Kramer, P.A.</u>, 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting <u>Kushner v. Beverly Enters.</u>, 317 F.3d 820, 831 (8th Cir. 2003), see also, <u>Jenisio v. Ozark Airlines, Inc., Ret. Plans</u>, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to dismiss where * * * the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

Here, the Plaintiff has attached numerous exhibits to his Complaint, including correspondence between the parties, as well as the Cease and Desist Orders, and the Restoration Order. See, <u>Complaint</u>, supra, Exhibits. In analyzing the merits of the Defendants' Motions, we have considered the allegations contained in the Complaint as well as the contents of its exhibits. Since all of those documents have been incorporated into the Plaintiff's Complaint, and since neither party disputes their authenticity, or contents, our consideration of those documents does not convert the

Defendants' Motions to Dismiss into Motions for Summary Judgment.  See, <u>Fraenkel v. Messerli & Kramer, P.A.</u>, supra at *2.

2.    <u>Legal Analysis</u>.  In their Motions, the State and County Defendants proffer an alternative basis for dismissal, based upon the Plaintiff's failure to state any constitutional claim.  Since we have concluded that <u>Younger</u> abstention is appropriate, with respect to the Plaintiff's underlying State criminal proceedings, the sole remaining issue is whether the Plaintiff has stated a constitutional claim relating to the PCA's administrative proceeding.

Complicating our analysis is the fact that, in his Complaint, the Plaintiff has followed a "shotgun approach," where "all possible constitutional violations and all common law claims are asserted on behalf of all plaintiffs against all named defendants," and "[i]t is then left to the court to divine what discrete constitutional violations are in fact legitimate and proper as to each plaintiff and as against each defendant."  <u>Liggins v. Morris</u>, 749 F. Supp. 967, 971 (D. Minn. 1990).  Nonetheless, we focus our analysis on the Plaintiff's allegations relating to the PCA's administrative proceeding, and the actions of Chamberlin, Woog, and Swanson.

According to the Complaint, on September 14, 2006, Chamberlin directed the Plaintiff to cease construction on his roadway, and to secure a Stormwater Permit

from the PCA.  See, <u>Complaint</u>, supra at ¶7.  Some months later, in July of 2007, the Plaintiff wrote a letter to Swanson, in which he advised of his belief that, pursuant to the United States Constitution, he was required to pay the application fee for a Stormwater Permit in gold and silver coin.  <u>Id.</u> at ¶8 and Exhibit A.  In addition, the Plaintiff advised Swanson that, if she failed to respond to his letter within ten (10) days, "the State of Minnesota [would be deemed to have waived] any and all future claims that the State of Minnesota or any of its agencies and or instrumentalities have against [the Plaintiff] and/or [his] land project for failure to file and pay any fee(s) not demanded in lawful money." <u>Id.</u>, Exhibit A.  The Plaintiff further advised that, "if any agent does in fact interfere with this project, after [Swanson's] default on this notice, they * * * agree ahead of time to be liable for 10,000 United States Dollars, lawful money, per restraint of liberty and/or trespass per day." <u>Id.</u>  When Swanson failed to respond within ten (10) days, the Plaintiff sent her a self-styled "Notice of Default." <u>Id.</u>, Exhibit C.

In a subsequent letter dated July 17, 2007, Swanson advised the Plaintiff that the United States Constitution does not mandate the use of gold and silver coins.  <u>Id.</u>, Exhibit D at p. 2, citing <u>The Legal Tender Cases</u>, 110 U.S. 421 (1884), and <u>Title 31 U.S.C. §5103</u>.  She further advised that her failure to respond to his letter "cannot

constitute tacit approval for [the Plaintiff's] land project," and she cautioned the Plaintiff that "failure to pay the [application] fee and obtain the [Construction Stormwater Permit] before [starting the] land project would constitute a violation of Minnesota's environmental protection laws, and may subject [the Plaintiff] to criminal or civil penalties that greatly exceed $400." Id.; see also, Complaint, supra, Exhibit F.

Thereafter, on September 18, 2007, Chamberlin provided the Plaintiff with a report, relating to the Plaintiff's obligation to secure a Stormwater Permit, id. at ¶11 and Exhibit G, and on October 1, 2007, Woog sent a letter to the Plaintiff, in which she advised that the PCA had identified several violations of the Minnesota Rules, and the NPDES permit requirements, at the Plaintiff's property, including the Plaintiff's failure to secure a Stormwater Permit. Id., Exhibit I. In that letter, Woog directed the Plaintiff to complete several corrective actions, and she advised him of his right to submit a written response, within ten (10) days. Id. In response, the Plaintiff informed Chamberlin, and Woog, that their "principal," the State of Minnesota, had defaulted its claims and authority, owing to Swanson's failure to respond to his initial letter. Id., Exhibits J, and DD. The Plaintiff also advised Chamberlin, and Woog, that their "forms demanding changes is [sic] just the kind of 'interference' that the State

\* \* \* agreed not to do," and the Plaintiff demanded $10,000.00 as compensation for their "trespass." Id.  By letter dated October 18, 2007, Swanson sent a response to the Plaintiff, in which she advised that the State had no intention of paying for any alleged "trespass," and in which she again advised the Plaintiff that, if he did not secure a Stormwater Permit for his project, he would face civil penalties from the PCA.  Id., Exhibit K.

Ultimately, on February 8, 2008, the PCA issued an Administrative Penalty Order, relating to the Plaintiff's violations of the Minnesota Rules and the NPDES, with a penalty of $10,000.00.  Id., Exhibit S; see also, Minnesota Statutes Section 116.072.  The Order informed the Plaintiff that he had thirty (30) days to seek an expedited Hearing before an Administrative Law Judge, or to seek review in a State District Court; otherwise, the Order would become final.  Id.; Minnesota Statutes Section 116.072, Subdivisions 6-7.  According to the State Defendants, the Plaintiff failed to take any appeal from the Administrative Penalty Order.  See, State Defendants' Memorandum in Support, Docket No. 4, at p. 7 n. 2.

Here, we understand the Plaintiff to challenge the PCA's authority over his

land.[12]   First, the Plaintiff alleges that he asked Woog which statute, rule, or

regulation, granted the State jurisdiction over his land, but Woog failed to respond.

See, Complaint, supra at ¶¶36, 39.  However, the Plaintiff's own exhibits refute his

claim, as Woog's letter, Swanson's letter, and the Administrative Penalty Order, all

cite to the relevant provisions of Minnesota law, which required the Plaintiff to secure

a Stormwater Permit from the PCA, prior to the commencement of any construction

activity.  Id., Exhibit S, citing Minnesota Rules 7090.2010, Subparts 2-3 ("Owners

and operators proposing activities that require a construction storm water permit under

this part must submit a complete permit application provided by the agency before

conducting construction activity."), 7050.0210, Subpart 2 (prohibiting the discharge

---

[12]As noted by the Defendants, the Plaintiff makes several outlandish claims concerning his misdemeanor citations, including that the criminal proceedings are invalid, because the State Court pleadings spell his name with capital letters, see, Complaint, supra at ¶24, and because he is a living human being.  Id. at ¶21.  The Plaintiff's arguments are wholly without legal merit.  See, United States v. Banks, 482 F.3d 733, 737 (4th Cir. 2007)(describing the defendants' arguments, "that the court had no subject matter jurisdiction because each was a 'real, live flesh and blood Man,'" as "spurious"); United States v. Gonzalez, 222 Fed.Appx. 238, 243 (4th Cir. 2007)(describing the defendants' arguments, that the Court lacked jurisdiction "because the indictment spelled their names using all capital letters, [and] the government failed to properly identify them as 'real, live flesh and blood M[en],'" as "frivolous" and "legally absurd").  Moreover, the Plaintiff does not make these allegations concerning the PCA's jurisdiction in the administrative proceedings.

of any waste into the waters of the State "so as to cause any nuisance conditions"); see

also, <u>Minnesota Statutes Section 115.03</u> (authorizing the PCA to "administer and

enforce all laws relating to the pollution of any of the waters of the state"), and

<u>Minnesota Statutes Section 116.072, Subdivisions 6-7</u> (authorizing the PCA to issue

Administrative Penalty Orders, for any violation of, inter alia, Minnesota Statutes

Sections 115.01, <u>et</u> <u>seq.</u>).

    At the Hearing, the Plaintiff argued that State and County laws do not apply to

his land, because it was never "ceded" to the United States.  See, <u>Complaint</u>, supra at

¶¶3 (The Plaintiff "is domiciled on the land in Minnesota, a foreign state to the

UNITED STATES and its enclave, STATE OF MINNESOTA.") [emphasis in

original], 17 ("Solors was not aware that 'the dejure Minnesota has ever ceded the

land in question to the jurisdiction of the UNITE [sic] STATES * * * .'") [emphasis

in original], quoting Exhibit L; see also, <u>Plaintiff's Memorandum in Opposition</u>, supra

at ¶7.  In support of this argument, the Plaintiff cites to Minnesota Statutes Section

1.01, which provides, in its entirety, as follows:

        The sovereignty and jurisdiction of this state **extend to all
        places within its boundaries** as defined in the Constitution
        and, concurrently, to the waters forming a common
        boundary between this and adjoining states, subject only to

<blockquote>
rights of jurisdiction acquired by the United States over places in it.
</blockquote>

[Emphasis added].

The Plaintiff contends that the statute "speaks for itself." <u>Plaintiff's Memorandum in Opposition</u>, supra at ¶7. We agree, although the Plaintiff will disfavor the outcome.

Here, there is no dispute that the Plaintiff owns the land in question. However, ownership alone does not prevent the regulation of his land by the State, and the County, as evidenced by Section 1.01, which makes plain that the State's jurisdiction applies to all of the land within its boundaries, including the Plaintiff's property. In addition, the Plaintiff's claim, that he is domiciled somewhere other than the State of Minnesota, is simply a parroting of the tax protestor's weary mantra. See, <u>United States v. Gerads</u>, 999 F.2d 1255, 1256 (8th Cir. 1993)("[W]e reject appellants' contention that they are not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota' and, consequently, not subject to taxation."), cert. denied, 510 U.S. 1193 (1994); <u>Holstad v. Sheady</u>, 2005 WL 615828 at *2 (D. Minn., March 14, 2005)(rejecting the plaintiff's argument, that he is "not subject to the [criminal] laws of Minnesota or the United States because he is not a citizen of either," as "meritless"). As a result, we reject the Plaintiff's argument, as having no basis in law, logic, or elemental common sense.

Next, the Plaintiff alleges that the State can no longer assert its authority over his land, because Swanson failed to respond to the Plaintiff's initial letter within ten (10) days.  Id. at ¶9 and Exhibit A.  However, as noted by the State Defendants, the Plaintiff's estoppel argument finds no basis in law.  Indeed, "[a] person seeking to estop the government must establish (1) the traditional elements of estoppel and (2) that the government conduct challenged amounts to 'affirmative misconduct.'" Chien-Shih Wang v. Attorney General, 823 F.2d 1273, 1276 (8th Cir. 1987), citing Heckler v. Community Health Services of Crawford, 467 U.S. 51, 61 (1984), and INS v. Miranda, 459 U.S. 14, 18 (1982)[per curiam]; see also, Morgan v. Commissioner, 345 F.3d 563, 567 (8th Cir. 2003)("The 'negligence and possible bad faith' of the IRS in this case is insufficient grounds for estoppel."); McDermott v. United States, 760 F.2d 879, 882-883 (8th Cir. 1985)("[E]ven if equitable estoppel is applicable against the government only a showing of 'affirmative misconduct' will suffice.").  Here, the Plaintiff has not alleged that Swanson made any promise or representation which induced his reliance, nor has he alleged that she engaged in any affirmative misconduct.  As a result, the Plaintiff's allegations fail to state any cognizable claim.

In addition, the Plaintiff alleges that the Defendants violated his rights under the Fourth, Fifth, and Tenth Amendments, although he has not explained any basis for

those claims.  Construing the Plaintiff's Complaint generously, we understand his Fourth Amendment claim to relate solely to his underlying criminal proceedings, and his arrest for failure to appear at his Arraignment.  See, United States Constitution, Amendment IV ("[N]o Warrants shall issue, but upon probable cause * * * .").[13]  As a result, we have already recommended that this claim be dismissed, based upon Younger abstention.

In turn, the Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." United States Constitution, Amendment X.  The Plaintiff has not proffered any plausible basis for his assertion that he was deprived of any right pursuant to the Tenth Amendment.  As a result, we recommend that this claim be dismissed as wholly without merit.[14]

The Plaintiff's Fifth Amendment claim, however, requires some additional analysis.  The Fifth Amendment, as applied to the States by the Fourteenth

---

[13]The Complaint does not contain any allegations, which would suggest that any searches or seizures occurred, other than the Plaintiff's arrest.

[14]At the Hearing, the Plaintiff made an enigmatic argument that, even if his constitutional rights were not being violated, nonetheless the rights of the Constitution itself were being violated.  Even if this argument was intended to bolster his Tenth Amendment claim, we find it to be wholly without merit.

Amendment, prohibits the State and Federal Governments from depriving a person of life, liberty, or property, without due process of law.  See also, <u>Warren v. Gov't Nat'l Mortgage Ass'n</u>, 611 F.2d 1229, 1232 (8th Cir. 1980), cert. denied, 449 U.S. 847 (1980)(holding that the Fifth Amendment due process clause applies to Federal actors, while the Fourteenth Amendment due process clause applies against the States, but "[t]he standard for finding federal government action under the fifth amendment is the same as that for finding state action under the fourteenth amendment."); <u>Sain v. Geske</u>, 2008 WL 2811166 at *12 (D. Minn., July 17, 2008) (citing same).  Here, construing the Complaint generously, we understand the Plaintiff to assert a procedural due process claim, based upon the actions of Chamberlin, Swanson, and Woog, to deprive him of his property.[15]

---

[15]The Plaintiff has not alleged any conduct which would "shock the conscience or otherwise offend our judicial notions of fairness, or * * * be offensive to human dignity," sufficient to support a claim for substantive due process.  See, <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998); see also, <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987); <u>Moran v. Clarke</u>, 296 F.3d 638, 643 (8th Cir. 2002); <u>Brown v. Nix</u>, 33 F.3d 951, 953 (8th Cir. 1994); <u>Weimer v. Amen</u>, 870 F.2d 1400, 1405 (8th Cir. 1989).  Nor do we find any basis to conclude that the Plaintiff alleges an infringement of his "fundamental" liberty interests, in a manner which is not narrowly tailored to serve a compelling governmental interest. See, <u>Weiler v. Purkett</u>, supra at 1051, citing <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993).  Accordingly, we focus our analysis on the Plaintiff's procedural due process claim.

"'In a procedural due process claim, it is not the deprivation of property or liberty which is unconstitutional; it is the deprivation of property or liberty **without due process of law** -- without adequate procedures.'" Birkenholtz v. Sluyter, 857 F.2d 1214, 1216 (8th Cir. 1988), quoting Daniels v. Williams, 474 U.S. 327, 339 (1986)(Stevens, J., concurring) [emphasis in original].   Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); see also, Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005)("To establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, i.e., without due process."); Doe v. Todd County School Dist., 2006 WL 3025855 at *10 (D.S.D., October 20, 2006)("An essential principle of due process is that a deprivation of life, liberty, or property must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case."), citing Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 313 (1950).

Here, the Plaintiff does not contend that he had a valid property interest in the Stormwater Permit -- indeed, he seems to argue that he should be excused from his obligation to secure that Permit, notwithstanding the requirements imposed by State

law, and the PCA's regulations.  Cf., <u>VanHorn v. Nebraska State Racing Comm'n</u>, 304 F. Supp.2d 1151, 1165 (D. Neb. 2004)(observing that "[a] legitimate claim of entitlement can arise from procedures established in statutes or regulations adopted by states or political subdivisions [for the issuance of a permit or license]."), citing <u>Littlefield v. City of Afton</u>, 785 F.2d 596, 600 (8th Cir. 2000)(holding that "an applicant for a building permit has a constitutionally protected property interest in the permit, [where issuance] is conditioned only by compliance with the ordinances," and where the city has no discretion to withhold the permit), overruled on other grounds, <u>Chesterfield Dev. Corp. v. City of Chesterfield</u>, 963 F.2d 1102, 1104 n. 2 (8th Cir. 1992); compare, <u>Carpenter Outdoor Advertising Co. v. City of Fenton</u>, 251 F.3d 686, 690 (8th Cir. 2001)(where State law and City ordinance gave the City discretion to regulate outdoor advertising, the plaintiff could not assert a legitimate property interest in the issuance of a permit); <u>Minneapolis Auto Parts Co. v. City of Minneapolis</u>, 572 F. Supp. 389, 395 (D. Minn.1983)(where a "City Council is vested with the discretion to grant or deny such a license or permit," "prior to its being issued, the applicant has no legitimate expectation of entitlement to a license or permit."), aff'd on other grounds, 739 F.2d 408 (8th Cir. 1983).

Nonetheless, even assuming that the Plaintiff asserts a valid property interest, we conclude that the Plaintiff has failed to state a valid procedural due process claim, as he has "alleged neither a lack of notice nor a denial of the opportunity to be heard," with respect to the PCA's enforcement actions.  See, <u>USCOC of Greater Missouri, LLC v. County of Franklin</u>, 2008 WL 2065060 at *4 (E.D. Mo., May 14, 2008) (dismissing due process claim, based upon the denial of a conditional use permit, where the plaintiff admitted that it had participated in the planning and zoning commissions' public hearings, by presenting evidence and testimony), citing <u>Carter v. Arkansas</u>, 392 F.3d 965, 969 (8th Cir. 2004); cf., <u>Arkansas Riverview Development, LLC v. City of Little Rock</u>, 2006 WL 2661158 at *4 (E.D. Ark., September 15, 2006) (denying Motion to Dismiss procedural due process claim, where the plaintiff "alleges that it has a property interest in the building permit under Arkansas law, that it has been deprived of this interest, and that the deprivation occurred 'without giving [the plaintiff] notice or an opportunity to be heard.'").  Indeed, the Plaintiff's submissions demonstrate, beyond cavil, that he was notified, on several occasions, of his obligation to secure a Stormwater Permit.  In addition, after the PCA notified the Plaintiff that he had committed certain violations of State law, the Plaintiff took advantage of his right to respond to the PCA's allegations, prior to the issuance of the Administrative

Penalty Order.  See, <u>Complaint</u>, supra at ¶¶7, 9, 11, 13-15, 22, Exhibits A, D, F, G, I,

J, K, S, and DD.

Accordingly, the Plaintiff has failed to state a procedural due process claim,

based upon the PCA's administrative proceeding.  See, <u>Carter v. Arkansas</u>, supra at

969 (affirming dismissal pursuant to Rule 12(b)(6), because, "[e]ven assuming Carter

has a property interest, he has not stated a procedural due process claim because he

is not challenging the manner of any deprivation, such as the lack of notice or

opportunity to be heard."), citing <u>Parrish v. Mallinger</u>, 133 F.3d 612, 615 (8th Cir.

1998).  As a result, we recommend that the State Defendants' Motion to Dismiss be

granted, with respect to the Plaintiff's claims arising out of the PCA's administrative

proceeding.

In sum, we recommend that the Defendants' Motions to Dismiss be granted,

with respect to all of the Plaintiff's claims.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the State Defendants' Motion to Dismiss [Docket No. 2] be granted.

2.      That the County Defendants' Motion to Dismiss [Docket No. 6] be

granted.

3.     That the Plaintiff's self-styled Motion in Opposition [Docket No. 14] be

denied, as moot.


Dated:  March 19, 2009                    *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than April**

**3, 2009,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than April 3, 2009,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.